**Independence Development, Inc. v.
American Arbitration Association**

*John Philip Diefenderfer* of *Stuckert, Yates & Krewson,* for plaintiffs.

*Richard H. Elliott,* for defendants.

MOUNTENAY, J., May 18, 1972.—This is an action in equity whereby plaintiffs seek to enjoin defendant, American Arbitration Association (hereinafter "AAA") from arbitrating a dispute between plaintiffs and defendant Lieberman, Inc. (hereinafter "Lieberman") and to enjoin Lieberman from submitting the said controversy to arbitration. Plaintiffs applied for a preliminary injunction, and by the time the hearing thereon was held, defendants had filed preliminary objections demurring and raising the question of venue. Following the hearing, it was agreed among the parties that all of their evidence had already been offered at the hearing on the application for a preliminary injunction and that the court, therefore, might make final disposition of the matter without further hearing. A formal stipulation was filed to this effect, and following the filing of an answer by Lieberman only, the pleadings were closed, as per said stipulation.

On June 2, 1970, Lieberman entered into an agreement with the corporate plaintiffs, which owned certain Bucks County real estate, and with the individual plaintiffs, who were the shareholders of the corporate plaintiffs, whereby Lieberman acquired an option to purchase all of the stock of the corporate plaintiffs

and thus secure, for all practical purposes, an option on the land itself. The particular provisions of the agreement which bear upon the present controversy will be set forth at length in our discussion of the demurrer. Lieberman was a licensed real estate broker, and the agreement in question, which clearly designates Lieberman as the "Buyer," also set forth that Lieberman was acting as agent for an undisclosed principal and authorized Lieberman to assign its interest under the agreement. In due course, Lieberman elected to exercise the option and then assigned its rights thereunder unto a third party. The agreement provided for arbitration by the AAA of certain controversies thereunder, and a dispute having arisen between plaintiffs and Lieberman as to the payment by plaintiffs of a commission allegedly due Lieberman under the agreement, Lieberman sought to have this controversy submitted to arbitration. Plaintiffs, taking the position that the arbitration provisions of the agreement did not embrace the particular type of controversy in question, filed the instant action to enjoin arbitration. Both defendants were served in Philadelphia County by deputized service, but it has been stipulated that Lieberman regularly does business in Bucks County. Basically, the issues now before us are: (1) Whether venue is properly laid in Bucks County, and (2) whether the arbitration provision of the agreement embraced the particular controversy in which the parties are presently engaged.

As to the question of venue, Pennsylvania Rule of Civil Procedure 1503(a), specifically applicable to actions in equity, provides that, "Except as otherwise provided by . . . Rule of the Supreme Court . . . an action may be brought in and only in a county in which (1) the defendant or a principal defendant may

be served, or (2) the property . . . which is the subject matter of the action is located."[1] Defendants argue that since neither defendant was served in Bucks County nor could properly have been served in Bucks County, the venue requirements of clause (1) have not been met.[2]

Defendants' argument overlooks Pa. R. C. P. 2179(a)(2) which states generally that an action may be brought against a corporation in and only in, inter alia, a county where it regularly conducts business.[3] Since it has been stipulated that defendant Lieberman

---

[1] Pa. R. C. P. 1503(a) in its entirety reads as follows:

"Rule 1503. *Venue.*

"(a) Except as otherwise provided by an Act of Assembly, Rule of the Supreme Court or by subdivision (b), (c) or (d), an action may be brought in and only in a county in which

"(1) the defendant or a principal defendant may be served, or

"(2) the property or a part of the property which is the subject matter of the action is located, but a judgment, order or decree shall not bind a defendant personally unless he is served within the county, or within the Commonwealth in conformity with Rule 1504(b), or unless he appears or otherwise submits himself to the jurisdiction of the court."

[2] No one has advanced the argument that venue could be laid in Bucks County under clause (2) of rule 1503(a), apparently because shares of stock rather than real estate constituted the subject matter of the action.

[3] Rule 2179(a) reads as follows:

"Rule 2179. *Venue.*

"(a) Except as otherwise provided by an Act of Assembly or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in

"(1) the county where its registered office or principal place of business is located;

"(2) a county where it regularly conducts business;

"(3) the county where the cause of action arose; or

"(4) a county where a transaction or occurrence took place out of which the cause of action arose."

regularly conducts business in Bucks County, the venue requirements of Rule 2179(a), at least as applied to Lieberman, have been met.[4]

We are then faced with the question of whether Rules 2179 and 1503 are in conflict, and if so, which rule supersedes the other. It is interesting to note that rule 1503(a) begins with the qualifying statement, "Except as otherwise provided by an Act of Assembly, [or] *Rule of the Supreme Court . . .*" (Italics supplied.)

On the other hand, the qualifying preamble of rule 2179 says, "Except as otherwise provided by an Act of Assembly . . .," but makes no reference whatever to another rule of court. This, in itself, is some indication that rule 1503(a) is intended to yield to rule 2179(a). Indeed, Goodrich-Amram § 1503(a)-1, asserts that there is no conflict between the two rules and that venue is properly established if the requirements of *either* are met. This commentary reads as follows:

"Against defendants which are not individuals, the venue provisions of the Rules, applicable to the particular class of defendant involved, will govern. This creates no ambiguity or conflict. Rule 1503 permits venue to be laid where 'the defendant' may be served. If the defendant, for example, is a corporation, Rule 2179(a), which applies both to actions at law and in equity, will define the counties in which the corporation may be served. Rule 2179(a) is incorporated by reference. The venue requirements of Rule 1503 will be satisfied if the venue requirements of Rule 2179(a) are met. All that is necessary, in most cases, is to show that the corporation legally conducts business in the county in order to validate the venue.

---

[4] As to whether venue in Bucks County could have been maintained under Pa. R. C. P. 2179(a)(3) and (4), see infra.

*"In those instances where there may be a different result under the two venue provisions it should be sufficient if either one authorizes the institution of the action in the county in which it was brought.* Otherwise, a Rule such as 2179(b)(3), which permits an action upon a policy of insurance to be brought in the county where the plaintiff resides, would be a nullity insofar as it applies to actions in equity." (Italics supplied.)

See also Everett v. Robbins et al., 80 D. & C. 207 (1951), which, although decided prior to the promulgation of rule 1503, reaches the same result with respect to the Act of April 6, 1859, P. L. 387, as amended, 12 PS §1254.

In view of the foregoing, we are of the opinion that venue has been properly laid in Bucks County insofar as Lieberman is concerned.

The situation with respect to AAA, however, is somewhat doubtful. In the first place, insofar as the record discloses, AAA neither regularly conducts business in Bucks County nor maintains either a registered office or a principal place of business in the county so as to fall within the provisions of either subparagraph (1) or (2) of rule 2179(a). Secondly, while the negotiations took place in Bucks County and plaintiffs actually signed the contract in Bucks County, the record does not disclose where Lieberman signed the agreement. Moreover, we do not know whether plaintiffs were the last of the contracting parties to affix their signatures. That is to say, the record is consistent with plaintiffs' having signed the agreement first and Lieberman's having executed it later in another county. We cannot conclude on the basis of this record that the agreement was actually "completed" in Bucks County, and, accordingly, venue cannot be established under rule 2179(a)(4) pertaining to situations where a "trans-

action or occurrence . . . out of which the cause of action arose" took place within the county. A distinction must be drawn between a *transaction or occurrence* and *part of a transaction.* That which we have before us constitutes only *part* of a transaction. See Craig v. W. J. Thiele & Sons, Inc., 395 Pa. 129 (1959); Aufiero v. Charnita, Inc., 88 Dauph. 15 (1967). Since we cannot establish venue under rule 2179(a)(4), a fortiori we cannot conclude that venue has been established under rule 2179(a)(3). This aspect of the matter, incidentally, was neither briefed nor argued by counsel.

It might also have been argued that venue having been established in Bucks County as to Lieberman, venue as to AAA, though not a principal defendant (see Peters Sportswear Co., Inc. v. American Arbitration Association, 427 Pa. 152 (1967)), must necessarily follow under the provisions of rule 1503(a)(1). It will be recalled, however, that rule 1503(a)(1) establishes venue only in a county in which ". . . a principal defendant *may be served.*" (Italics supplied.) As noted earlier, Lieberman was not served in Bucks County but rather in Philadelphia County by deputized service.

The question which next confronts us is whether Lieberman *may* have been served in Bucks County. That *venue* is properly laid in Bucks County under rule 2179 does not necessarily compel the conclusion that Lieberman might properly have been *served* in Bucks County. The record does not indicate that Lieberman maintained an office or authorized agent for service in Bucks County so as to permit service *within* the county under rule 2180(a), and, of course, the remaining subsections of that rule pertain to service *outside* the county. Therefore, venue in Bucks County cannot be maintained solely on the basis of rule 1503(1), it appearing that Lieberman, the principal defendant, could not have been served in Bucks

County. Therefore, since venue as to AAA can be established neither under rule 2179 nor rule 1503, we conclude that venue is not proper with respect to AAA.

It might appear at first blush that the result thus achieved is an undesirable one. As to this particular case, however, the relief which plaintiffs seek can be afforded even though AAA is not maintained as a party; a decree binding upon Lieberman will be sufficient to prevent further pursuit of the arbitration process. As to the broader implications of such a ruling, had the record established that the cause of action arose in Bucks County or that a transaction or occurrence out of which the cause of action arose took place in Bucks County, venue could have been established both as to Lieberman and as to AAA under rule 2179(a)(3) or (4). As the matter stands, however, the only basis for maintaining the action in Bucks County is the fact that Lieberman happened to do business here on a regular basis. If Bucks County's connection with the action is no more substantial than this, there would seem to be no good reason that AAA should be compelled to defend the action here.

As to whether the controversy in question constitutes a proper subject for arbitration under the language of the agreement, we begin with the proposition that equity may enjoin the arbitration of a controversy: Atkinson v. Sinclair Refining Co., 370 U.S. 238 (1962); Schoellhammer's Hatboro Manor, Inc. v. Local Joint Executive Board of Philadelphia, 426 Pa. 53 (1967). Moreover, an agreement or instrument which reduces legal rights which would otherwise exist must be strictly construed against the party asserting it and must spell out with the utmost particularity the intention of the parties: Galligan v. Arovitch, 421 Pa. 301 (1966); Morton v. Ambridge Borough, 375 Pa. 630 (1954). This principle has been ap-

plied specifically to agreements to arbitrate, and it has been held that in order to oust the jurisdiction of the courts, the language of such agreements must be clear and unmistakable: Russo v. Independent Erection Co., 94 Pitts. L. J. 232 (1945).

Turning then, to the language of the agreement itself, we find that the agreement begins by denominating plaintiffs as "sellers" and defendant Lieberman as "buyer." The agreement then proceeds to establish certain option rights in the buyer. Section 12.4, quoted infra, makes it clear that Lieberman is acting as agent for an undisclosed principal and that if the option rights are exercised, a six percent commission, to be paid by sellers, is to be shared equally between Lieberman and another broker. Finally, section 12.8, providing for the arbitration of controversies "between buyer and sellers," reads as follows:

"12.8. *Arbitration* Any controversy between Buyer and Sellers with respect to this Agreement shall be settled by arbitration to be held in the City of Philadelphia, Pennsylvania, before a single arbitrator appointed by the Philadelphia Office of the American Arbitration Association. The decision of the arbitrator shall be final and binding upon Buyer and Sellers, both as to law and to fact and shall not be appealable to any Court in any jurisdiction. The expenses of the arbitration shall be shared equally by Buyer and Sellers."

As stated previously, Lieberman ultimately assigned its option rights unto a third person, and the dispute which Lieberman seeks to submit to arbitration concerns Lieberman's claim to commission under section 12.4. Plaintiffs argue that section 12.8 of the agreement limits the arbitration of controversies to those arising between "buyer" and "sellers" and that Lieberman is not the "buyer" within the context of

section 12.4 relating to commissions. Defendants argue, on the other hand, that the agreement specifically designates Lieberman as the "buyer" and that, therefore, *any* dispute between Lieberman and the "sellers" falls squarely within the language of section 12.8 irrespective of the nature of the controversy.

Bearing in mind that the controversy between the parties arises out of section 12.4, we turn to the language of that section which reads as follows:

"12.4. *Brokers.* It is understood that *Lieberman, Inc.* is acting as Agent for an undisclosed principal; and that if the within option is exercised, Fred H. Herrmann, Inc. agrees to divide equally with *Lieberman, Inc.,* as cooperating broker, a 6% commission on the gross purchase price, which commission is to be paid by Sellers." (Italics supplied)

It is significant that while the term "buyer" is used throughout the agreement, section 12.4 avoids that term completely and rather names Lieberman specifically. This is quite understandable; section 12.4 deals with the usual concerns of brokers rather than with the concerns of buyer and seller. Even the heading of section 12.4, *"Brokers,"* is consistent with this. Again, both the substance of section 12.4 and also the controversy itself involve the payment of commissions, a point of contention normally arising between broker and broker or between broker and seller or occasionally between broker and buyer, but almost never between buyer and seller. Noting then, the avoidance of the term "buyer" in the language of section 12.4, we are led to the conclusion that the parties intended that Lieberman be regarded in section 12.4 not as the "buyer" but merely as the broker.

Moreover, Lieberman may well have lost its standing and identity as "buyer" when it completed the assignment. It could certainly be argued that the as-

signee had become the "buyer" upon the delivery to it of the assignment, and whether Lieberman retained any of the attributes of the "buyer" is questionable. While we do not regard this last-mentioned consideration as dispositive of the issue, it does lend support to the conclusion which we have already reached.

Accordingly, inasmuch as we do not view the controversy relative to the payment of commissions as a controversy between "buyer" and "seller," we conclude that the present controversy does not fall within the provisions of section 12.8 providing for compulsory arbitration and that Lieberman should, therefore, be enjoined from submitting the same to arbitration.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the subject matter of this action.

2. The court has jurisdiction over defendant, Lieberman, Inc., and that defendant is properly before the court.

3. Venue is not properly laid in Bucks County as to defendant, American Arbitration Association, and, accordingly, the complaint is dismissed as to that defendant.

4. The parties contracted to arbitrate certain controversies which might arise with respect to a certain agreement among them.

5. A dispute has arisen among the parties, the subject matter of which is set forth in the said agreement.

6. The aforesaid controversy does not fall within the scope of those arbitrable under the said agreement.

## DECREE NISI

And now, May 18, 1972, defendant Lieberman, Inc., is permanently enjoined from submitting to American Arbitration Association for arbitration any controversy among the parties pertaining to the payment or

division of commissions under section 12.4 of the agreement entered into by and among plaintiffs and defendant, Lieberman, Inc., on June 2, 1970.

The prothonotary shall give notice of the filing of the above adjudication to the parties by mailing to each of them a copy thereof; and if no exceptions shall be filed within the period of 20 days following such notice, the decree nisi shall be entered by the prothonotary on praecipe as the final decree of the court.

